# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

ROGER W. ARMER, )
                                            Plaintiff, )
v.                                     )    Case No. CIV-11-292-KEW

MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
                                            Defendant. )

## OPINION AND ORDER

Plaintiff Roger W. Armer (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on February 25, 1957 and was 52 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant worked in the past as a lime kiln operator, welder's helper, and some part time work as a boat builder.

3

Claimant alleges an inability to work beginning February 1, 2006 due to limitations resulting from a club foot.

**Procedural History**

On July 20, 2007, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On May 19, 2009, an administrative hearing was held before ALJ Richard Kallsnick in Tulsa, Oklahoma. On June 22, 2009, the ALJ issued an unfavorable decision. On July 14, 2011, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of light work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to consider the vocational impact of all of Claimant's impairments;

4

(2) failing to consider a 2009 x-ray medical opinion; (3) failing to discuss the 2009 x-ray medical opinion evidence which was significantly probative; (4) rejecting the opinion of the reviewing radiologist of the 2009 x-ray; (5) engaging in a faulty credibility determination; and (6) failing to develop the record with regard to the limitations imposed by Claimant's foot impairment.

### Consideration 2009 X-Ray

In his decision, the ALJ found Claimant suffered from the severe impairment of clubfeet. (Tr. 15). He determined Claimant retained the RFC to perform a full range of light work, finding he could lift 20 pounds occasionally and 10 pounds frequently, stand/walk or sit for 6 hours in an 8 hour workday, had use of his hands and feet for operation of controls, experienced mild to moderate pain, could remain attentive in a work setting and carry out work assignments, and took medication but remained sufficiently alert. (Tr. 16). After consultation with a vocational expert, the ALJ determined Claimant retained the RFC to perform the representative jobs of ticket seller, sewing machine operator, toll collector, and bench hand. (Tr. 18). He concluded Claimant was not disabled. (Tr. 18-19).

All of Claimant's allegations of error surround the ALJ's consideration or lack of consideration of a 2009 x-ray of his feet.

5

On April 29, 2009, an x-ray of Claimant's left foot and ankle at the direction of his physician, Dr. Michael Wyly. The x-ray was reviewed by Dr. Thomas L. Harrison. Dr. Harrison interpreted the three views of the foot and found ankylosis of the talus, calcaneus and navicular bones were identified. The bones were osteopenic and pes planus deformity was noted. Degenerative joint disease was involved in the mid foot. There was a question of a subtle periosteal reaction adjacent to the mid shaft of the second proximal phalanx. Dr. Harrison's impression was ankylosis with possible fusion of the talus, calcaneus and navicular bones, osteopenia, pes planus, possible healing fracture mid shaft of the second proximal phalanx and degenerative joint disease of the mid foot. (Tr. 290).

Defendant admits the ALJ did not reference this x-ray study in his decision. The ALJ noted Claimant underwent multiple surgeries on his feet beginning in his childhood. He found that the consultative examination on Claimant performed by Dr. Kurella found no clubbing, cynanosis, edema, or neurological deficits due to Claimant's clubfeet. He noted Claimant's dorsi-inversion of his feet was normal with no obvious risk of falling while walking. The ALJ did acknowledge significant restriction in range of motion of Claimant's ankles. He did not require an assistive device. (Tr. 17).

The record must demonstrate that the ALJ considered all of the evidence, including the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Not only was the 2009 x-ray probative and could potentially impact Claimant's RFC but was also more recent than the 2007 evaluation of Dr. Kurella or the 2005 last x-ray performed on Claimant's feet. On remand, the ALJ shall consider the 2009 x-ray and its interpretation by Dr. Harrison.

**Credibility Determination**

Claimant also contends the ALJ failed to properly evaluate his credibility. The ALJ was skeptical of Claimant's claims of limitations and pain because no treating source imposed functional restrictions upon him based upon the effects of his clubfoot. He also did not find that Claimant's assertions of pain were not substantiated by objective medical evidence. (Tr. 16). The ALJ accurately set forth Claimant's testimony concerning his pain and restrictions upon his daily living. Id.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are

7

peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

While the ALJ did relate Claimant's testimony, he did not identify the specific objective medical evidence which he finds contradicted that testimony. Moreover, the ALJ employed the highly questionable but oft-cited boilerplate language suggesting the ALJ predetermined Claimant's RFC before considering the credibility of his statements and the impact those statements might have upon his RFC. On remand, the ALJ shall fulfill his obligation to

affirmatively link his findings on credibility with the objective medical record - and avoid the improper boilerplate findings.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 25th day of March, 2013.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE